# EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| PATRICK B. CAGE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| vs. | ) | |
| | ) | |
| TIFFANY HARPER, NICHOLAS | ) | |
| GOWEN, KAMBIUM BUCKNER, | ) | |
| DR. MARSHALL HATCH, SR., | ) | |
| DR. HORACE SMITH, in their | ) | |
| individual capacities, and | ) | |
| BOARD OF TRUSTEES OF CHICAGO | ) | |
| STATE UNIVERSITY, | ) | |
| | ) | |
| Defendants. | ) | |

2017L010843
CALENDAR/ROOM S
TIME 00:00
Statutory Action

## COMPLAINT AT LAW

Plaintiff Patrick B. Cage (hereinafter referred to as "Plaintiff" or "Mr. Cage"), states for

his complaint against Defendants Tiffany Harper, Nicholas Gowen, Kambium Buckner, Dr.

Marshall Hatch, Sr., Dr. Horace Smith (hereinafter collectively referred to as the "Individual

Defendants"), in their individual capacities, and Defendant Board of Trustees of Chicago State

University (hereinafter referred to as the "Board") as follows:

## INTRODUCTION

1.       For more than seven years, Mr. Cage served as General Counsel for Chicago State

University (hereinafter the "University"). During his tenure, he was consistently rated as meets or

exceeds expectations in his annual performance reviews.

2.       In early 2017, Mr. Cage reported concerns about the conduct of certain members

of the Board to the Chair of the Board, Defendant Dr. Marshall Hatch, Sr. At the time, Mr. Cage

was not legal counsel to the Board and had no duty to express his concerns about unethical and

1

unlawful conduct of the Board members to the Board Chair. The Board had its own legal counsel. The conduct of the Board is governed by the University Bylaws, and by state and federal law.

3.  Mr. Cage told Defendant Hatch that a newly appointed Board member, Paul Vallas, was using his position as a Board member to obtain a paid leadership position with the University in violation of the University's Bylaws. Article VIII of the Bylaws addresses conflicts of interest, stating that a "conflict of interest is present whenever a trustee, officer, or employee has a material personal interest in a proposed contract or transaction to which the corporation is a party." The Bylaws also specifically provide that a trustee may not "use personal influence" on a matter for which they have a "duality of interest."

4.  After Mr. Cage reported his concerns to Defendant Hatch, Board members began discussing terminating Mr. Cage's employment. At the same time, Mr. Vallas resigned from the Board and the very next day was appointed to a full-time position with the University by the same Board that he had been lobbying for a paid position while on the Board.

5.  Within weeks of Mr. Vallas obtaining a paid position with the University, Mr. Cage's employment was terminated. He had received no criticisms of his performance beforehand, no notice of any allegations against him, and no hearing. Rather, in the same meeting, he was told for the first time that his employment was being terminated, provided no explanation as to anything he had done or failed to do leading to the termination, and then told to pack up his belongings and leave the building immediately. He was escorted out of the building within hours by University security.

6.  The Board was aware that Mr. Cage's employment was being terminated before the termination as it had approved a severance package which was then offered to Mr. Cage at the

2

time of his termination. The Board was also aware that University Regulations governed the employment of University employees including Mr. Cage.

7.      The University Regulations specifically provide that Mr. Cage was entitled to 12 months of continued employment following a notice of termination without cause. (§II, Subsection B(b)(2)). Mr. Cage was denied the twelve months of employment and instead was provided no continued employment after receiving notification of the termination. Continued employment would not only have allowed Mr. Cage to continue to receive his compensation and benefits, but would have provided time for Mr. Cage to find new employment during his final year of employment with the University to significantly enhance his chances of securing comparable employment and preserve his good reputation.

8.      The University Regulations further provide that Mr. Cage was entitled to notice and a hearing before a termination for "adequate cause" could take place. In order for the University to terminate Mr. Cage for "adequate cause," a determination as to whether "adequate cause" existed had to be made by the Board exercising "sound discretion" and such a determination was to be made after Mr. Cage had received notice and a hearing. (§II, Subsection B(c)(2); §II, Subsection B(f)(i)-(vi)). A hearing would have allowed Mr. Cage an opportunity to confront his accusers (to the extent there were any) and present evidence refuting any claims there was cause. Mr. Cage never had this opportunity.

9.      In a transparent but futile attempt to avoid liability and retaliate against Mr. Cage for his protected activities, Defendants ignored the University Regulations across the board and terminated Mr. Cage's employment with no notice, no hearing, and no evidence.

10.     As a result of these events, Mr. Cage has suffered substantial losses, including significant damage to his previously unblemished reputation, interference with his career, and lost

3

wages. Therefore, Mr. Cage brings this action for retaliation for engaging in whistleblower activity protected by the State Officials and Employees Ethics Act, 5 ILCS § 430/15-10, against all Defendants, and denial of procedural due process under 42 U.S.C. § 1983 against the University.

## THE PARTIES

11. Plaintiff Patrick Cage is an attorney licensed by the State of Illinois. He is a citizen of Illinois and served as General Counsel for the University from 2009 through May 22, 2017.

12. Defendant Tiffany Harper is a citizen of Illinois. She was a member of the Board at the time Paul Vallas was appointed to the Board and through the time Mr. Cage was advised of his termination. Based on that role, she was a State officer.

13. Defendant Nicholas Gowen is a citizen of Illinois. He was a member of the Board at the time Paul Vallas was appointed to the Board and through the time Mr. Cage was advised of his termination. Based on that role, he was a State officer.

14. Defendant Kambium Buckner is a citizen of Illinois. He was a member of the Board at the time Paul Vallas was appointed to the Board and through the time Mr. Cage was advised of his termination. Based on that role, he was a State officer.

15. Defendant Dr. Marshall Hatch, Sr. is a citizen of Illinois. He was a member of the Board at the time Paul Vallas was appointed to the Board and through the time Mr. Cage was advised of his termination. Based on that role, he was a State officer.

16. Defendant Dr. Horace Smith is a citizen of Illinois. He was a member of the Board at the time Paul Vallas was appointed to the Board and through the time Mr. Cage was advised of his termination. Based on that role, he was a State officer.

4

17.     Defendant Board of Trustees of Chicago State University is the public entity authorized to enter into contracts on behalf of Chicago State University and, pursuant to 110 ILCS § 660/5, to "sue and be sued" in connection with Chicago State University actions.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this matter as each party to the Complaint is a citizen of Illinois or a state entity doing business in Illinois and entering into contracts substantially connected with Illinois. 735 ILCS § 5/2-209.

19.     Venue is proper in this district pursuant to 735 ILCS § 5/2-101 and 735 ILCS § 5/2-102 because part of the transaction out of which the cause of action arose took place in Cook County, Illinois, and because the University is considered a resident of Cook County, Illinois, through conducting business in Cook County.

## FACTS

### Plaintiff Patrick Cage was Highly Regarded by His Employer, the University, Throughout His Employment

20.     Mr. Cage was hired by the University on November 1, 2009 to the position of General Counsel.

21.     During his tenure at the University, Mr. Cage consistently received annual performance reviews rating him as exceeding or extremely exceeding expectations.

22.     On June 21, 2012, Mr. Cage was featured in an article in the Chicago Daily Law Bulletin which highlighted his career in higher education and his accomplishments on behalf of the University.

5

**Plaintiff Patrick Cage Became Aware of Unethical Conduct by Paul Vallas and Certain Board Members, and Reported His Concerns to the Board Chair**

23.     On January 17, 2016, Paul Vallas was appointed to the University Board by Governor Rauner.

24.     Immediately after being appointed to the University Board, Mr. Vallas announced Governor Rauner's plan for Mr. Vallas to take the role of Chair of the University Board though a Chair was elected just one month earlier by the University's Board in accordance with Illinois law.

25.     According to Article V, Section 1 of the Bylaws, the Board Chair is elected by the Board, not appointed by the Governor.

26.     According to a Chicago Sun Times article published on March 18, 2017, Governor Rauner also intended for Mr. Vallas to be President of the University. Mary Mitchell, *Mitchell: Is Rauner pushing Paul Vallas to be president of CSU?*, Chicago Sun Times, March 18, 2017, available at https://chicago.suntimes.com/news/mitchell-is-rauner-pushing-paul-vallas-to-be-president-of-csu/. According to the Sun Times, Governor Rauner's Secretary of Education, Beth Purvis, called a meeting with Defendant Hatch and then Board member Tony Anderson and told them if "Rauner's request isn't met, he will not secure additional funding to help solve the school's financial woes and withdraw his support." At the time, the University was in dire financial condition and the funds were much needed.

27.     University Regulations, Section II, Subsection B(b)(1) provide that the President shall be employed by and serve at the pleasure of the Board, not the Governor, unless the contract of employment specifies otherwise.

28.     University Regulations contain no provision stating the Governor may appoint the President of the University.

29.     Mr. Vallas does not hold an undergraduate degree in Education and holds no post-undergraduate degree.

30.     Mr. Vallas had no work experience in higher education at the time he was appointed to the University Board.

31.     After being appointed to the University Board, Mr. Vallas began discussing with certain Board members his interest in a paid position with the University.

32.     While on the University Board, Mr. Vallas undertook to develop a strategic plan working with "pro bono" consultants, many of the same individuals who worked for him and Gary Solomon, another formerly high-paid school consultant, in the past. Vallas then began telling other Board members that it would be in the University's interest to appoint Mr. Vallas to a paid position with the University as part of Vallas' recommended strategic plan, to give him authority to lead the University in the absence of a non-interim President, and to hold off on filling the position of President until down the road.

33.     Mr. Vallas has a long history of mixing his leadership positions at public institutions with lucrative business opportunities for the benefit of himself or his friends. For example, when Mr. Vallas became the head of the Philadelphia school system, Mr. Solomon, who was the lead consultant for the Princeton Review, received $6 million from the Philadelphia public school district for consulting services.

34.     At the same time Mr. Solomon was benefitting from the lucrative contract with the Philadelphia school system, Mr. Solomon was running Solomon Consulting Services and, according to sources such as The Philadelphia School Notebook, an independent, nonprofit news service, was boasting that his firm has obtained exclusive rights to "The Vallas model." Sheila Simmons and Paul Socolar, *Cashing in on 'The Vallas model'?*, The Philadelphia School

7

Notebook, April 29, 2005, available at thenotebook.org/articles/2005/04/29/cashing-in-on-the-vallas-model. At that time, Solomon Consulting Services employed another of Vallas' cronies, Cozette Buckney, to provide services to the Philadelphia school district though she was simultaneously working for the St. Louis school district. Reports confirm she was submitting personal expenses for reimbursement to the financially-strapped Philadelphia school district. The district refused to reimburse Ms. Buckney for her personal expenses and required her to reimburse the district for approximately $20,000 of improper personal expenditures for which she had already been reimbursed.

35.     Mr. Vallas also provided another of Mr. Solomon's firms, Synesi Associates, with two no-bid contracts when Vallas took the helm of the financially-strapped New Orleans school district. To help Synesi obtain the business, Mr. Vallas vouched for Synesi Associates in a series of letters to the New Orleans school board. Dan Mihalopoulos and Lauren FitzPatrick, *Vallas, Rauner's pick for CSU, vouched for figure in CPS scandal*, Chicago Sun Times, April 17, 2017, available at https://chicago.suntimes.com/news/paul-vallas-bruce-rauners-pick-for-chicago-state-university-vouched-for-figure-in-cps-scandal-gary-solomon-synesi/. The contracts were worth in excess of $800,000. Mr. Vallas urged the board to approve the deal with the out-of-town Synesi firm, claiming no one else was qualified and competitive bidding for the work would be useless. *Id.*

36.     In late 2007, Vallas was again pushing for more lucrative no-bid contracts for Solomon's firm. Vallas offered to help the Peoria school district for free, but the free advice he gave was that the district should hire Solomon's firm, Synesi Associates, to implement his recommendations at a cost of $600,000.

37.     Mr. Solomon, Mr. Vallas' long time business associate, was charged with bribery and conspiracy to defraud the United States in 2016 and this year, 2017, plead guilty to wire fraud and was sentenced to over 7 years in prison. The criminal case against Solomon concerned yet another Solomon business venture, SUPES Academy, and the consulting firm Vallas had recommended to the New Orleans school district, Synesi Associates. In the matter leading to Solomon's conviction, Solomon recommended a SUPES Academy consultant, Barbara Byrd-Bennett, for the top position with the Chicago Public Schools ("CPS"). Byrd-Bennett, as the head of CPS, then paved the path for CPS to enter into lucrative no-bid contracts, totaling approximately $23 million, with SUPES Academy and Synesi Associates and in return Solomon set up a trust fund for the benefit of Byrd-Bennett that would provide for a payment to her when she left employment with the CPS.

38.     Former employees of Solomon's consulting firms including Byrd-Bennet, have also been charged, sentenced, and are now serving time in federal prisons. Former Synesi Associates employee, Ms. Buckney, who obtained tens of thousands of dollars in public funds for her personal benefit, was characterized by Vallas as demonstrating a "lack of judgment" when she submitted tens of thousands of dollars in personal expenses for reimbursement from the financially-strapped Philadelphia school district. Though Vallas confirmed she lost her job because of this conduct, he has now hired her, and other former Solomon associates, to work for the University.

39.     In late February 2017, Mr. Cage met for lunch with Defendant Hatch at Leona's Restaurant located at 9156 South Stoney Island Avenue in Chicago, Illinois. During this lunch, Mr. Cage discussed his concerns that Vallas' efforts to obtain the position of University President while sitting on the University Board was a conflict of interest and violated the University

Bylaws. In April Mr. Cage, through counsel, sent a letter to the University Board reiterating his concerns that Vallas' conduct violated the University Bylaws. Just weeks prior to expressing these concerns to Defendant Hatch, Defendant Hatch met with Mr. Cage and other top officials of the University to discuss whether Defendant Hatch wanted to replace them. During the meeting, Defendant Hatch reassured all of them that he was pleased with their performance and had no intention of terminating their employment.

40.     The public accounts of Mr. Vallas' involvement with purported school experts who turned out to be bilking the public for millions and using public funds that could have gone to help public school students were well known to Mr. Cage when he reported his concerns to Defendant Hatch, as they would be to anyone who took the time to look. Though the Board, or its counsel, could easily have accessed this information, and though it was undisputed that Mr. Vallas was advocating for a paid position with the University while still sitting on the University Board, no investigation was conducted in response to Mr. Cage's reported concerns about Mr. Vallas' conflict of interest and improper conduct.

**Paul Vallas' Unethical Conduct Led to a Paid Position at the University and the Termination of Plaintiff Patrick Cage's Employment**

41.     On April 6, 2017, Mr. Vallas resigned his position on the University Board, which he had only held for three months—long enough to persuade the other Board members from the inside to approve a paid position for him.

42.     The next day, on April 7, 2017, the Board voted on whether to approve a contract with Mr. Vallas for a high-level employment position that never existed before—Chief Administrative Officer. Just days before, Chairman Hatch could not even explain specifically what the position would entail. Board Member Nikki Zollar voted against the contract with Mr. Vallas while the remainder of the Board voted in favor. After the vote, Ms. Zollar spoke concerning the

10

ethical violations resulting from Mr. Vallas' efforts to secure the paid position while on the Board which she characterized as a conflict of interest in violation of the University's Bylaws. She had previously expressed these same concerns to Board members. While expressing her concerns, she noticed the tape recorder, which is used to record Board meetings and required when the Board is in executive session, as they were at that time for the Vallas vote, was not set to record. Ms. Zollar left the room at that time to contact the University staff member who handles the recorder and was advised by her that Defendant Hatch had given instructions to turn on the recorder but to not activate it to record.

43.     Pursuant to Illinois law, specifically 5 ILCS § 120/2.06(a), all public bodies are required to keep a verbatim record of all of their closed meetings in the form of an audio or video recording.

44.     After stating her objections to the contract to hire Vallas as an employee, Ms. Zollar resigned her position as a Board member because she could not continue to participate on a Board that disregarded its legal and ethical obligations.

45.     Despite Ms. Zollar's numerous admonitions against the conduct of Mr. Vallas and the conduct of the Board, and despite Mr. Cage's expressed concerns regarding the same, the Board took no action concerning Mr. Vallas' conflict of interest and approved his contract for a paid position with the University.

46.     Article VIII of the Bylaws addresses conflicts of interest, stating that a "conflict of interest is present whenever a trustee, officer, or employee has a material personal interest in a proposed contract or transaction to which the corporation is a party." The Bylaws also specifically provide that a trustee may not "use personal influence" on a matter for which they have a "duality of interest."

11

47.     At the same time that Mr. Vallas was awarded a contract for a paid position with the University, Dr. Rachel Lindsey was appointed Interim President of the University by the Board and Mr. Cecil Lucy's employment as Interim President was terminated.

48.     Candidates who interviewed for the position of President during the months leading up to the appointment of Dr. Lindsey were asked if they would terminate the employment of Patrick Cage if appointed to the position.

49.     Following Mr. Cage's discussion with Defendant Hatch about ethical concerns involving Vallas, University Interim President Cecil Lucy was asked by Defendants Harper and Gowen if he would be willing to terminate the employment of Patrick Cage if he was selected as President of the University. He responded that he would not and was shortly thereafter replaced by Dr. Lindsey as Interim President.

50.     In early 2017, after Mr. Cage had expressed his concerns about Mr. Vallas' conduct to Chairman Hatch, Dr. Anne Smith, who expressed interest in the position of President, was asked by Defendant Harper if Dr. Smith would be willing to terminate Mr. Cage's employment if she were appointed President of the University. After she responded that she could not answer the question without having more information about the situation, she was not interviewed again for the position of President and was not appointed as the President or Interim President of the University.

51.     On or about May 15, 2017, just weeks after Mr. Vallas began employment with the University, Mr. Cage became aware that Vallas had hired away Mr. Cage's administrative assistant without his knowledge, an unusual event given Mr. Cage was a Vice President and General Counsel. Mr. Cage addressed this issue with Dr. Lindsey, asking her whether the rumors that Mr. Cage's employment would be terminated were true. Dr. Lindsey assured Mr. Cage there was no

truth to the rumors and said she thought that Mr. Cage had resigned and specifically mentioned that doing so without giving the appropriate notice would be bad for Mr. Cage's career. Mr. Cage assured Dr. Lindsey that he had not resigned.

52.     Less than one week after the May 15, 2017 meeting, Dr. Lindsey summoned Mr. Cage to a meeting in her office. Interim Human Resource Director Lindsay Hamilton was also present at the meeting. During the meeting, Mr. Cage was notified that his employment was being terminated immediately. Dr. Lindsey stated that she had evaluated everyone on the University's senior staff to determine who has the skill set, experience, and motivation necessary to effectively help her address the significant changes the University faces and accomplish the goals set out for her by the Board. She stated that after careful consideration, she decided that Mr. Cage was not the right fit for the position of Vice President and General Counsel moving forward.

53.     Mr. Cage was then presented with a Separation Agreement and General Release. This meeting was the first in which Dr. Lindsey mentioned any concerns about Mr. Cage to him. He was first told of the termination and then given the vague reasons for the decisions.

54.     Mr. Cage was not permitted to remain employed by the University following notification of the termination.

55.     Mr. Cage was not given notice by the University of any allegations against him prior to coming into the meeting with Dr. Lindsey on May 15, 2017.

56.     Mr. Cage was not told who had provided any evidence against him that Dr. Lindsey deemed supported her decision to terminate Mr. Cage's employment.

57.     Mr. Cage was not given an opportunity to address any concerns against him prior to being notified of his termination in the May 15, 2017 meeting.

13

58.   The University Board members were advised in advance of the May 15, 2017 meeting between Dr. Lindsey and Patrick Cage that Mr. Cage would be terminated by Dr. Lindsey at or around the time of the May 15, 2017 meeting.

59.   University Regulations, §II, Subsection B.4, paragraph (b)(2)(c) govern the length of employment an employee in the position Mr. Cage held with the University is entitled to following notice of a termination without cause.

60.   Pursuant to University Regulations, §II, Subsection B.4, paragraph (b)(2)(c), Mr. Cage, who as of May 15, 2017 was beyond his sixth year of employment with the University, was entitled to receive notice of a termination no later than twelve months prior to the termination date specified for termination in the notice if his employment was being terminated without cause.

61.   Mr. Cage did not receive twelve months of employment following receipt of the notice of termination; he received 0 days of continued employment following receipt of the notice of termination. The termination occurred at the same time the notice was provided.

62.   University Regulations, §II, Subsection B.4, paragraph (c)(2) through paragraph (f)(4)(c) govern the process for terminating an employee in the position Mr. Cage held with the University for cause.

63.   Pursuant to University Regulations, §II, Subsection B.4, paragraph (f)(vi), before terminating Mr. Cage's employment for cause, the Board was required to be given the recommendation of the University President, a transcript of the hearing concerning termination of Mr. Cage's employment, and documentary evidence presented at the hearing.

64.   Pursuant to University Regulations, §II, Subsection B.4, paragraph (f)(vi), the determination of whether there is cause to terminate Mr. Cage's employment was to be made by

14

the Board after receipt of the recommendation of the President, the transcript of the hearing, and the documentary evidence presented at the hearing.

65.     Each of the individual Defendants who were on the Board in May of 2017 was aware of Dr. Lindsey's plans to terminate Mr. Cage's employment.

66.     None of the individual Defendants who were on the Board in May of 2017 received a transcript of a hearing concerning any allegations against Mr. Cage.

67.     None of the individual Defendants who were on the Board in May of 2017 received any documentary evidence presented to a committee conducting a hearing into whether Mr. Cage's employment should be terminated.

68.     None of the individual Defendants who were on the Board in May of 2017 was present when Mr. Cage was advised that his employment was being terminated on May 15, 2017.

69.     When Mr. Cage exited the meeting with Dr. Lindsey he was met by a University security officer who escorted him to his office to collect his personal things, and he was then escorted by security off of University property.

70.     May 15, 2017 was Mr. Cage's last day of employment with the University.

**Defendants' Conduct Damaged Plaintiff Cage Personally and Professionally**

71.     After Mr. Cage's employment was terminated, an article appeared in the Chicago Crusader disclosing that Mr. Cage had been "fired" along with the former University police chief. J. Coyden Palmer, *Chicago State fires embattled police chief*, The Chicago Crusader, May 26, 2017, available at https://chicagocrusader.com/chicago-state-fires-embattled-police-chief/. The article discloses that Patricia Walsh, the police chief, was terminated and that after she was allowed to "clear out her office" she was escorted from the campus by two University officers. The article states that Mr. Cage was fired "along with" Walsh and that just four days later the director of

15

communications got "angry" when asked if she could confirm if Mr. Cage and Ms. Walsh were still employees and did not confirm they were. The article further states that a call to Mr. Cage's campus phone number was answered by a message that the number "was no longer taking messages" and that the "University's switchboard said they had no listing for Cage."

72.     The article accurately depicts the abrupt termination of Mr. Cage's employment.

73.     As a direct and proximate result of Defendants' conduct, Mr. Cage has suffered damages, including but not limited to, lost wages, lost benefits, loss of future employment commensurate with his experience and professional standing, loss of status and self-esteem, incidental damages, great expense, and pain and suffering in the form of emotional distress, embarrassment, and humiliation.

74.     It is clear from the evidence that it was the Board, and not Dr. Lindsey, who made the decision to terminate Mr. Cage's employment. Dr. Lindsey had minimal contact with Mr. Cage, communicated no criticisms of his performance during their short time working together, assured him that his employment would not be terminated just one week before his termination, was subjected to pre-hiring interviews by the same Board members who requested that Mr. Lucy and Dr. Smith answer questions about terminating the employment of Mr. Cage if hired, and confirmed that the individual Defendants were aware of and approved the plan to terminate Mr. Cage's employment.

75.     The Board, on the other hand, actively engaged in conduct that displayed their animosity toward Mr. Cage's concerns about Paul Vallas, including failing to investigate Mr. Cage's concerns, turning off the audio recording to prevent the discussions leading up to the vote to give Mr. Vallas a contract from being recorded as required under Illinois law, asking candidates for the position of President whether they would agree to terminate Mr. Cage's employment if

hired, and ignoring their legal obligations to make the final determination of whether there was in fact adequate cause to terminate Mr. Cage's employment in accordance with and as required under the University Regulations. Accordingly, and for all of these reasons, Mr. Cage brings the following claims:

**COUNT I – Violation of the State Officials and Employee Ethics Act,**
**5 ILCS § 430/15-10, for Unlawful Retaliation**
**(All Individual Defendants)**

76.     Mr. Cage repeats and reasserts the allegations of paragraphs 1 through 75 as if fully restated herein.

77.     The State Officials and Employees Ethics Act provides in relevant part that "An officer, a member, a State employee, or a State agency shall not take any retaliatory action against a State employee because the State employee…discloses or threatens to disclose to a supervisor…an activity, policy, or practice of any officer, member, State agency, or other State employee that the State employee reasonably believes is in violation of a law, rule, or regulation." 5 ILCS § 430/15-10(1).

78.     Mr. Cage engaged in activity protected by the State Officials and Employees Ethics Act when he reported his concerns that Paul Vallas' conduct on the Board constituted a breach of his ethical obligations under the University Bylaws.

79.     The individual Defendants were and are officers of a State agency.

80.     Mr. Cage's protected activity led to the termination of his employment.

81.     By approving the termination of Mr. Cage's employment in violation of the University Regulations, the actions of the Defendant Board Members were unauthorized.

**WHEREFORE** Plaintiff Mr. Cage respectfully requests the entry of judgment in his favor and against the individual Defendants as follows:

17

A. An award of compensatory damages in an amount to be proven at trial, including two times the amount of back pay;

B. Punitive damages;

C. An award of prejudgment interest, computed according to 735 ILCS § 5/2-1303;

D. An award to Plaintiff for reasonable attorneys' fees and costs; and

E. All other relief this Court deems just.

**COUNT II – Violation of the State Officials and Employee Ethics Act,
5 ILCS § 430/15-10, for Unlawful Retaliation
(Defendant Board of Trustees of Chicago State University)**

82.     Mr. Cage repeats and reasserts the allegations of paragraphs 1 through 81 as if fully restated herein.

83.     The State Officials and Employees Ethics Act provides in relevant part that "An officer, a member, a State employee, or a State agency shall not take any retaliatory action against a State employee because the State employee…discloses or threatens to disclose to a supervisor…an activity, policy, or practice of any officer, member, State agency, or other State employee that the State employee reasonably believes is in violation of a law, rule, or regulation." 5 ILCS 430/15-10(1).

84.     Mr. Cage engaged in activity protected by the State Officials and Employees Ethics Act when he reported his concerns that Paul Vallas' conduct on the Board constituted a breach of his ethical obligations under the Bylaws.

85.     The Board of Trustees of Chicago State University is a state agency and/or supervisor under the State Officials and Employees Ethics Act and has authority to enter into or terminate contracts in accordance with federal and state law and University Bylaws and Regulations including contracts for employment on behalf of the University.

18

86.     Mr. Cage's protected activity led to the termination of his employment by the University.

**WHEREFORE** Plaintiff Mr. Cage respectfully requests the entry of judgment in his favor and against Defendant Board of Trustees of Chicago State University as follows:

A.  An award of compensatory damages including front pay, back pay, damage to Mr. Cage's employment prospects and reputation, loss of earning potential, and pain and suffering;

B.  Punitive damages;

C.  An award of prejudgment interest, computed according to 735 ILCS § 5/2-1303;

D.  An award to Plaintiff for reasonable attorneys' fees and costs; and

E.  All other relief this Court deems just.

**COUNT III – Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983**
**Denial of Plaintiff Cage's Constitutional Rights to Procedural Due Process**
**(Defendant Board of Trustees of Chicago State University)**

87.     Mr. Cage repeats and reasserts the allegations of paragraphs 1 through 86 as if fully restated herein.

88.     42 U.S.C. § 1983 provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

89.     Defendant Board of Trustees of Chicago State University is a "person" under 42 U.S.C. § 1983.

19

90.     The 14th Amendment to the U.S. Constitution provides that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. 14, § 1

91.     Pursuant to the University Regulations, Mr. Cage had a protected property interest in completing his employment in accordance with the terms of his agreement with the University, including continuing in his employment for twelve months following receipt of notice of termination without cause unless a hearing was provided establishing cause as determined by the Board.

92.     At the time of Mr. Cage's discharge on May 15, 2017, he had not been given any form of due process, including without limitation, notice of the charges and evidence against him, a hearing or any other opportunity to respond, or the chance to present evidence in his own defense and to cross-examine witnesses.

93.     Instead, Mr. Cage was invited to a meeting that had no stated purpose, arrived, and was advised that his employment was being terminated with no specific allegation of anything he had done or failed to do in carrying out his responsibilities provided to him, and was escorted by security to his office to collect his personal property and leave the University premises immediately following the meeting.

94.     Dr. Lindsey notified Mr. Cage that it was her decision, but advised him that the University Board was aware that she was taking this action as they had approved the severance agreement she was presenting him with at the time of termination.

95.    Defendant Board of Trustees of Chicago State University either knew that Mr. Cage's Constitutional procedural due process rights would be violated, condoned the violation of Mr. Cage's Constitutional rights, or turned a blind eye to Constitutional violations.

96.    As a direct and proximate result of Defendant Board of Trustees of Chicago State University's conduct, Mr. Cage has suffered damages, including but not limited to, lost wages, lost benefits, loss of future employment commensurate with his experience and professional standing, loss of status and self-esteem, incidental damages, great expense, and pain and suffering in the form of emotional distress, embarrassment, and humiliation.

**WHEREFORE** Plaintiff Mr. Cage respectfully requests the entry of judgment in his favor and against Defendant Board of Trustees of Chicago State University as follows:

A.    An award of compensatory damages in an amount to be proven at trial including two times the amount of back pay;

B.    Punitive damages;

C.    An award of prejudgment interest, computed according to 735 ILCS § 5/2-1303;

D.    An award to Plaintiff for reasonable attorneys' fees and costs; and

E.    All other relief this Court deems just.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

<br>

Respectfully submitted,

Dated: October 24, 2017                    **PATRICK CAGE**

/s/ Ruth I. Major
One of His Attorneys

21

Ruth I. Major
The Law Offices of Ruth I. Major P.C.
30 West Monroe Street
Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
Firm No. 45037

**Civil Action Cover Sheet - Case Initiation**                    **(05/27/16) CCL 0520**

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

Patrick B. Cage

v.

Board of Trustees of Chicago State University, et al.

**27L010843**

No. _____

### CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the
complaint in all civil actions. The information contained herein
is for administrative purposes only and cannot be introduced into
evidence. Please check the box in front of the appropriate case
type which best characterizes your action. Only one (1) case type
may be checked with this cover sheet.

Jury Demand ☐ Yes ☐ No

**PERSONAL INJURY/WRONGFUL DEATH**
CASE TYPES:
- ☐ 027 Motor Vehicle
- ☐ 040 Medical Malpractice
- ☐ 047 Asbestos
- ☐ 048 Dram Shop
- ☐ 049 Product Liability
- ☐ 051 Construction Injuries
  (including Structural Work Act, Road
  Construction Injuries Act and negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☐ 061 Other Personal Injury/Wrongful Death
- ☐ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action
  (Please Specify Below**)
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

**TAX & MISCELLANEOUS REMEDIES**
CASE TYPES:
- ☐ 007 Confessions of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 031 Foreign Transcript
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

By: /s/ Ruth I. Major
    (Attorney)                    (Pro Se)

(FILE STAMP)

2017 OCT 25 PM 3:09

**COMMERCIAL LITIGATION**
CASE TYPES:
- ☐ 002 Breach of Contract
- ☐ 070 Professional Malpractice
  (other than legal or medical)
- ☐ 071 Fraud (other than legal or medical)
- ☐ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☑ 074 Statutory Action
  (Please specify below.**)
- ☐ 075 Other Commercial Litigation
  (Please specify below.**)
- ☐ 076 Retaliatory Discharge

**OTHER ACTIONS**
CASE TYPES:
- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

** State Officials and Employee Ethics Act, 5 ILCS § 430/15-10; and
Civil Rights Act of 1871, 42 U.S.C. § 1983

Primary Email: rmajor@major-law.com

Secondary Email: dbroadwell@major-law.com

Tertiary Email: iziminski@major-law.com

**Pro Se Only:** ☐ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice
form the **Clerk's Office** for this case at this email address: _____

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | **(01/25/17) CCG N001** |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Patrick B. Cage

_____
(Name all parties)

v.

Board of Trustees of Chicago State University, et al.
_____

No. 2017 L 010843

*TO: Dr. Marshall Hatch, Sr.*
*c/o Chicago State University Office of General Coun.*
*Cook Administration Building, Room 317*
*9501 South King Drive*
*Chicago, IL 60628*

◉ **SUMMONS** ○ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

- ☑ Richard J. Daley Center, 50 W. Washington, Room _801_____, Chicago, Illinois 60602
- ☐ District 2 - Skokie
  5600 Old Orchard Rd.
  Skokie, IL 60077
- ☐ District 3 - Rolling Meadows
  2121 Euclid
  Rolling Meadows, IL 60008
- ☐ District 4 - Maywood
  1500 Maybrook Dr.
  Maywood, IL 60153
- ☐ District 5 - Bridgeview
  10220 S. 76th Ave.
  Bridgeview, IL 60455
- ☐ District 6 - Markham 16501
  S. Kedzie Pkwy. Markham,
  IL 60428
- ☐ Child Support: 50 W.
  Washington, LL-01,
  Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: _45037_____

Name: _The Law Offices of Ruth I. Major, P.C._

Atty. for: _Plaintiff, Patrick B. Cage_

Address: _30 West Monroe Street, Suite 1650_

City/State/Zip Code: _Chicago, Illinois 60603_

Telephone: _(312) 893-7544_

Primary Email: _rmajor@major-law.com_

Secondary Email: _rmajor@major-law.com_

Tertiary Email: _iziminski@major-law.com_

Witness: _____ DOROTHY BROWN
CLERK OF CIRCUIT COURT

DOROTHY BROWN, Clerk of Court

Date of Service: _____ NOV 2 2017
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____
(Area Code)  (Facsimile Telephone Number)

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

2120 - Served
2220 - Not Served
2320 - Served By Mail
2420 - Served By Publication
Summons - Alias Summons

2121 - Served
2221 - Not Served
2321 - Served By Mail
2421 - Served By Publication

(01/25/17) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Patrick B. Cage

(Name all parties)

v.

Board of Trustees of Chicago State University, et al.

No. 2017 L 010843

To: Kambium Buckner
C/O Chicago State University Office of General Coun
Cook County Administration Building, Room
9501 King Drive
Chicago, IL 60628

◉ SUMMONS ◯ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 801 , Chicago, Illinois 60602
☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077
☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008
☐ District 4 - Maywood
1500 Maybrook Dr.
Maywood, IL 60153
☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455
☐ District 6 - Markham 16501
S. Kedzie Pkwy. Markham,
IL 60428
☐ Child Support: 50 W.
Washington, LL-01,
Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 45037
Name: The Law Offices of Ruth I. Major, P.C.
Atty. for: Plaintiff, Patrick B. Cage
Address: 30 West Monroe Street, Suite 1650
City/State/Zip Code: Chicago, Illinois 60603
Telephone: (312) 893-7544
Primary Email: rmajor@major-law.com
Secondary Email: rmajor@major-law.com
Tertiary Email: iziminski@major-law.com

Witness: DOROTHY BROWN
CLERK OF CIRCUIT COURT

DOROTHY BROWN, Clerk of Court
Date of Service: NOV 02 2017
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

(Area Code) (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | |

(01/25/17) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Patrick B. Cage

_____
(Name all parties)

v.

Board of Trustees of Chicago State University, et al.

_____

No. 2017 L 010843

To: Nicolas Gowen
c/o Chicago State University Office of General Co
Cook Administration Building, Room 317
9501 South King Drive
Chicago, IL 60628

☉ **SUMMONS** ◯ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room __801_____, Chicago, Illinois 60602
☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077
☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008
☐ District 4 - Maywood
1500 Maybrook Dr.
Maywood, IL 60153
☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455
☐ District 6 - Markham 16501
S. Kedzie Pkwy. Markham,
IL 60428
☐ Child Support: 50 W.
Washington, LL-01,
Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: __45037_____

Name: __The Law Offices of Ruth I. Major, P.C.__

Atty. for: __Plaintiff, Patrick B. Cage__

Address: __30 West Monroe Street, Suite 1650__

City/State/Zip Code: __Chicago, Illinois 60603__

Telephone: __(312) 893-7544__

Primary Email: __rmajor@major-law.com__

Secondary Email: __rmajor@major-law.com__

Tertiary Email: __iziminski@major-law.com__

Witness: ~~DOROTHY BROWN~~
CLERK OF CIRCUIT COURT

DOROTHY BROWN, Clerk of Court NOV 0 2 2017

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:**

_____
(Area Code) (Facsimile Telephone Number)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Page 1 of 1

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | |

(01/25/17) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Patrick B. Cage
_____
(Name all parties)

v.

Board of Trustees of Chicago State University, et al.
_____

**No.** 2017 L 010843

To: Board of Trustees of Chicago State University
C/O Chicago State University Office of the General Coun
Cook County Administration Building, Room
9501 South King Drive
Chicago, IL 60628

◉ **SUMMONS** ○ **ALIAS SUMMONS**

To each Defendant:

   YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room  801_____, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Dr.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham 16501
S. Kedzie Pkwy. Markham,
IL 60428

☐ Child Support: 50 W.
Washington, LL-01,
Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.:  45037_____

Name:  The Law Offices of Ruth I. Major, P.C.

Atty. for:  Plaintiff, Patrick B. Cage

Address:  30 West Monroe Street, Suite 1650

City/State/Zip Code:  Chicago, Illinois 60603

Telephone:  (312) 893-7544

Primary Email:  rmajor@major-law.com

Secondary Email:  rmajor@major-law.com

Tertiary Email:  iziminski@major-law.com

Witness:  DOROTHY BROWN
CLERK OF CIRCUIT COURT

DOROTHY BROWN, Clerk of Court

Date of Service:  NOV 0 2 2017
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____
(Area Code)   (Facsimile Telephone Number)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
Page 1 of 1

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | |

(01/25/17) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Patrick B. Cage

(Name all parties)

v.

Board of Trustees of Chicago State University, et al.

No. 2017 L 010843

TO: *Tiffany Harper*
*C/O Chicago State University Office of General*
*Counsel*
*Cook Administration Building, Room?*
*9501 South King Drive*
*Chicago, IL 60628*

☑ SUMMONS ○ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room **801**, Chicago, Illinois 60602

| ☐ District 2 - Skokie | ☐ District 3 - Rolling Meadows | ☐ District 4 - Maywood |
|---|---|---|
| 5600 Old Orchard Rd. | 2121 Euclid | 1500 Maybrook Dr. |
| Skokie, IL 60077 | Rolling Meadows, IL 60008 | Maywood, IL 60153 |
| ☐ District 5 - Bridgeview | ☐ District 6 - Markham 16501 | ☐ Child Support: 50 W. |
| 10220 S. 76th Ave. | S. Kedzie Pkwy. Markham, | Washington, LL-01, |
| Bridgeview, IL 60455 | IL 60428 | Chicago, IL 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: **45037**

Name: The Law Offices of Ruth I. Major, P.C.

Atty. for: Plaintiff, Patrick B. Cage

Address: 30 West Monroe Street, Suite 1650

City/State/Zip Code: Chicago, Illinois 60603

Telephone: (312) 893-7544

Primary Email: rmajor@major-law.com

Secondary Email: rmajor@major-law.com

Tertiary Email: iziminski@major-law.com

Witness: _____

DOROTHY BROWN
CLERK OF CIRCUIT COURT

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____
(Area Code)   (Facsimile Telephone Number)

NOV 0 2 2017

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Page 1 of 1

2120 - Served
2220 - Not Served
2320 - Served By Mail
2420 - Served By Publication
Summons - Alias Summons

2121 - Served
2221 - Not Served
2321 - Served By Mail
2421 - Served By Publication

(01/25/17) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Patrick B. Cage

_____
(Name all parties)

v.

Board of Trustees of Chicago State University, et al.

_____

No. 2017 L 010843

TO: Dr. Horace Smith
C/O Chicago State University Office of General Couns.
Cook Administration Building, Room 317
9501 South King Drive
Chicago, IL 60628

☑ SUMMONS ○ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room __801__, Chicago, Illinois 60602
☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077
☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008
☐ District 4 - Maywood
1500 Maybrook Dr.
Maywood, IL 60153
☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455
☐ District 6 - Markham 16501
S. Kedzie Pkwy. Markham,
IL 60428
☐ Child Support: 50 W.
Washington, LL-01,
Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: __45037__

Name: __The Law Offices of Ruth I. Major, P.C.__

Atty. for: __Plaintiff, Patrick B. Cage__

Address: __30 West Monroe Street, Suite 1650__

City/State/Zip Code: __Chicago, Illinois 60603__

Telephone: __(312) 893-7544__

Primary Email: __rmajor@major-law.com__

Secondary Email: __rmajor@major-law.com__

Tertiary Email: __iziminski@major-law.com__

Witness: __DOROTHY BROWN__
CLERK OF CIRCUIT COURT

DOROTHY BROWN, Clerk of Court

Date of Service: __NOV 0 2 2017__
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____
(Area Code)    (Facsimile Telephone Number)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
Page 1 of 1